and others. The facts in this case are largely uncontroverted. This case arises out of a sale of a debt owed by the Menchions. The Menchions received a $200,000 home equity line of credit from American Home Mortgage. American Home Mortgage subsequently assigned the debt to Prime Asset. And on November 29, 2012... I think we know the facts. Maybe if you could get to the law, it would help me. We understand, Your Honor. We will do that. The procedural posture and the issues on appeal, I would like to address those. In the District Court, the Prime Asset filed a motion for summary judgment. And the District Court ruled in favor of Best Service and Menchions on their motions for summary judgment. So those are the issues on appeal with respect to Best Service. And we are not appealing the issues as to the Menchions, just to be clear. The law, Your Honor, this case arises out of Section 6.3 of the sale contract. And whether that was enforceable under Florida law, it is not. The District Court found... Well, since there's some concern about who's a proper defendant in this case, maybe if you could break it down, the Best folks. No question that they're here on appeal. You are disagreeing the District Court's grant of judgment to Best. It would help me if you could tell me why you think the District Court erred as to Best first. And then we'll talk about Prime. Yes, Your Honor. Best rights are solely as the collection agent for Prime Asset. So the best way to understand that, Your Honor, is that under applicable law, Best, as the agent or assignee of Prime Asset, had only the rights that Prime Asset had. And so Prime Asset had sold the loan to my client, Cadle. And so Best Service had no rights to pursue the collection of the debt because it was just a collection agent for Prime Asset. But they sold it to your client before they had sold it to Best. Your Honor, it was an assignment for collection purposes only. It was not an absolute assignment. If you read the assignment, it said it's assigned for collection. What was the timing of Best with relations to your client? Twenty-two days prior. Best was ahead of your client. As, quote, assignee for collection only. That is correct. But when Prime Asset sold the loan to Cadle, then title to the loan and title to the debt, title to the asset, became vested in my client, out of Prime Asset. And at that point, Best Services' rights became terminated because it was solely the collection agent for purposes of collection. So Best, then, you would say, would have the same defense that Prime would have with regard to this disputed part of the contract, correct? That is correct. And so that then gets into what you were about to get into, whether or not the district court erred when it said that clause was enforced. That's correct. To jump back, and not to get into the jurisdictional issue too much because the court didn't steer me in that direction, the issues are inextricably intertwined for purposes of jurisdiction because it's the same issue. The district court may blame— I just want to know the merits of the issue. Whether it's Best Prime or only Best, tell me why the district court's wrong in its interpretation of that provision. Because under Florida law, what we have is a contractual limitation on remedies. And under Florida law, in order to have an enforceable contractual limitation on remedies for breach of contract, the limitation must be one, mutual, two, unequivocal, and three, reasonable. And in this case, it's not a mutual limitation on the remedies, and it's not a reasonable limitation on the remedies. As I look at the cases that you cite, all of the Florida cases that invalidate or refuse to enforce contract clauses limiting the remedies are in condo and land sale type cases where you have a very sophisticated seller and an unsophisticated buyer. But here you have two sophisticated commercial parties. So why do you think that that law would apply to you? Your Honor, I recognize that a lot of the cases deal with condos. There are a lot of condos in Florida, and it appeared to be that some of the condo developers were using this type of remedy. The cases are not limited to real estate and with respect to the sophisticated commercial nature of the parties. The one case I would point the court to is Metropolitan-Dade County v. Worsham Brothers Company. And, Your Honor, I would say that both of the parties in that dispute were sophisticated parties. Certainly, Dade County, sophisticated. Presumably, the development company Worsham Brothers is a business. It's a commercial property. And in that case, it was involving a construction contract. So it's not about real estate. It's not about a condo. And in that case, the contract provided a mutual limitation on the contractual remedies. If the construction contract were terminated by either party, then there were no damages. So that's a mutual agreement not to have any damages. But what the Florida Court of Appeals said is, well, if Dade County caused the breach, which in this case was because Worsham Brothers did not begin construction on time, then if Dade County caused the breach, then that was an unenforceable remedy. Excuse me, an unenforceable limitation on the contractual right to the party. So, Your Honor, I think that what the courts say is another, like in the Hackett case, if you have a contractual remedy that says you get nothing back, then that is no remedy at all. That's an illusory remedy. And all of these decisions, the Hackett case, Miami v. Dade County, the Ocean Dunes case, if all you get is your money back, that's not a remedy. And that's unenforceable. And that's the facts of this case. The district court ruled that Cato got $700 back. It got its money back. It didn't get any cost. It didn't get any interest. So that's no damages at all. And all of the cases from Florida are very consistent. That's unenforceable because it's not a remedy at all. So if you look at the Hackett case, it says that in that case the party got their money back and interest. And in Hackett, the Florida court said, well, that's your money anyway. Just because you get your interest back on that money, that's not a damage. That's not a remedy. So the only decision, and there's also the Inlet Beach case. And in Inlet Beach, that was held to be enforceable, but there the party got their damages back. So it's important to understand that it must be a reasonable limitation on contractual rights. And it also must be mutual. And here it's not mutual because to revert back to Your Honor's question about sophisticated commercial parties, there's no mutuality in this obligation. So if you have a package of loans and the seller says, oops, we inadvertently didn't mean to include this one, that's a unilateral right to take an asset out of the deal. And Cato had no such rights to unilaterally reject one of the loans in the package. So there's the way the debt— I don't see a difference in a situation with a condo sale between two parties and something where you've got this huge portfolio of loans where mistakes are going to happen. And I think Seventh Circuit and South Financial v. McFarland noted, clearly the parties are sophisticated. There's an allocation of risk. You're getting each loan for pennies. And the understanding would be in return for that very favorable price when a mistake happens, then this particular provision applies. And your clients sign this provision. There's also provision, Section 8.1, that says a withdrawal will be allowed by prime if there's an inability to satisfy representations. You're essentially saying we signed it, we got a really great deal on these, and then when things go south, we're just going to ignore, wipe out those two contractual provisions. They don't exist when they don't help us. That's your argument. Your Honor, my argument is that the limitation on contractual remedies in Section 6.2 of this agreement is unenforceable under Florida law. And if you look at the Florida case, the contract says it's to be interpreted under Florida law. The Florida law is clear that where there is no remedy, there is no damage. Then that's unenforceable. Let me ask you equitably, and that may be something about prime, and I know Judge Martin and I too want to get to why they're even here, but we're still talking about BEST. And BEST makes an equitable argument that you knew full well they were out there working. They spent time, they spent energy, they got this assignment before you ever sold these loans. And you know what they're doing, and you know they're going to court. And they succeed, and then you wait in pounce after they've done the work to get the money. And their argument is as a matter of equity, even if you're right on this contractual provision that adds to BEST, you should not prevail against them for the monies that they recovered. Could you respond to that argument? Yes, Your Honor. That's the money had and received claim against BEST Service. And under Georgia law, an action for money had and received lies where another has received money which the plaintiff is entitled to recover and which the defendant is not entitled in good conscience to retain. So specifically, factually, Your Honor, we put BEST Service on notice. They knew that we were the actual true owner of the debt. So they went out and collected the debt. Sure, Your Honor, they worked hard, but they did so with full knowledge that they were working on behalf of someone who had already conveyed the asset. So going back to the beginning of this argument, Your Honor, they were the assinee for purposes of collection. They're the collection agent. They know that Cadle is the true owner of the debt, so they proceed at their own risk. The case that's closest on point and in favor of BEST on this would be the Time Insurance versus Fulton County DeKalb Hospital case, which is cited by both parties in the briefs. That's the Grady Hospital case. And in Grady Hospital, there's two distinctions. Grady had no notice that the insurance company mistakenly made the payment. Here, BEST Service had notice. And the other distinction is Cadle didn't pay the money, and in that case, Time did pay the money. So the money didn't come from us. This argument you're making about equity and good conscience, I didn't see where you raised that in your brief on appeal. Wouldn't that claim have to go back to see whether you met the element? Even if we agree with you that the district court erred on this claim, wouldn't it have to go back so that you could show the other elements of the claim? It would, Your Honor. I think it was not raised in our opening brief because—may I answer, Your Honor? It was not raised in our opening brief because what we focused this appeal on was the actual ruling by the district court judge. And the district court judge's ruling in this case is solely based upon the contractual limitation on remedies in Section 6.3. So you're right. The district court did not address that. It was raised by BEST Service in its brief, so we did respond to it, I believe, in our rebuttal brief. And I attempted to respond to it in response to Your Honor's question, to the question with respect to the claims against BEST Service for money he hadn't received. Mr. Jones, you're out of time, but I just—before you sit down, your client has no further claims against Mr. and Ms. Minchin, do you? That is correct. Okay. Thank you. We— You've saved time on rebuttal, but— Thank you. Good morning, Your Honors, and may it please the Court. Steven Flynn here for Prime Asset Fund 5 LLC. What is the best place in the record for me to find the citizenship of the members of your client as of May 9, 2014? The district court resolved this— No, what's the best place in the record for me? To answer the question of the court, that information I don't believe is in the record. It was submitted by Mr. Maurer upon provision of information by my client in a document filed July 12, 2018. Is that an accurate statement of the citizenship of the members of your client— Yes, it is, Your Honor. —as of May 9, 2014? The day of removal, that's what I heard. That's correct. I believe it is, Your Honor, but I don't believe it's in the record. I have—the information I have is what was filed with the court on July 12, 2018 in response to this court's remand question. All right, so— So, it doesn't provide a specific date, I don't believe, as to when those members were particular citizens, of which states. It's accurate, certainly, as of July 12, 2018. Okay. Thank you. Your Honors, as the court is aware, I personally am fairly new to this case. The other attorneys have been living with it quite a bit longer than I have, but we did raise a jurisdictional issue with the court recently that I'd like to address briefly. As Mr. Jones indicated in his presentation, the claims that were certified for immediate review by Judge Thrash were not—did not pertain to prime assets, specifically the denial of summary judgment as to the appellant's claims against prime asset for breach of contract and money hadn't received. The district court denied summary judgment on that prime, did not move for summary judgment at any point in the case. The district court certified certain claims for immediate review under Rule 54B. The claims against my client were not among them. There was no interlocutory certificate of review sought or obtained pursuant to 28 U.S.C. 1292B. And so there's certainly a jurisdictional question as to what my client is doing here, which I believe Judge Carnes was at least hinting at or alluding to. We've recently filed— In other words, had you been in the case sooner, you might have filed a motion to dismiss sooner. I think it's fair to say different attorneys look at different things in a case, but certainly as someone who's been in this court many times now, jurisdiction is the first thing I look at. And for the reasons we stated in our motion, I don't believe, and my client doesn't believe, that this court has jurisdiction over the claims against my client because those claims have never been adjudicated on the merits by the district court. We simply have a denial of a motion for summary judgment. Because I understand the plaintiff may have claims against you based on things other than this one particular section of the contract, and that hasn't been adjudicated at all, correct? Your Honor, the claims against my client, as I said, are for breach of contract, specifically a breach of the warranty section, section 6.2. Section 6.3 specifically addresses what is to happen if there is a breach of that specific provision. Now, I understand on appeal there are some claims that different sections of the contract may have been breached, and in my review of the record, I haven't seen where that argument was made below. You did not discuss in your motion to dismiss the appeal the district court's August 15, 2018 order administratively closing the case. Could that order cure the part of the notice of appeal that was premature? I don't believe so, certainly for purposes of this appeal, Your Honor, because those claims still haven't been adjudicated on the merits and there hasn't been a final judgment issued one way or the other with respect to those claims. We have the order terminating the case for abandonment, so I think on appeal the issue would be whether or not that issue was on that, that finding of the district court was proper as to abandonment. I think that would be the primary issue for this court to address. I was just curious. The docket doesn't show anything, show why, maybe you don't, why there was abandonment. Is there something not in the docket that we aren't aware of? Your Honor, I can't speak to that directly. I can speculate if the court would like, but I believe the speculation is dangerous, I recognize that, but given the length of time that this case has been pending in the district court and certainly the length of time it has been on appeal, there was very little to no action taken with respect to the merits of the claims. There was the remand order from this court directing the parties to discuss the jurisdictional issues, but in terms of prosecuting the claims, the actual substance of the claims, there was little to nothing done on that, and the district court in its discretion decided that that constituted abandonment, and I can't speak for Judge Sharras as to why he did that. But didn't that order effectively terminate the litigation on the merits? Your Honor, there wasn't a finding on the merits. In terms of terminating the case, obviously it says that the case is administratively terminated, but there was certainly not a finding as to the merits of those claims. There was simply a finding of abandonment, and so that's where we are. So on remand— But if the district court had entered a judgment, then that would cure the premature notice of appeal, correct? Arguably, Your Honor. I think we cited it, I believe, in a footnote in our brief, the Federal Rules of Appellate Procedure concerning, I believe it's Rule 4, concerning the entry of a separate document and the effect of that, which hasn't occurred here. We simply have an order but not a separate judgment that's been entered by the district court on that, which governs the time to appeal under Rule 4. It seems to me that that might be elevating form over substance. It could be, Your Honor. That issue hasn't been briefed, if I'm being candid with the court. You would agree, though, that the district court indicated its intent not to do anything further on the claims. I think I couldn't see it otherwise, Judge. I think the district court has made its decision as to where it is with the case currently. Mr. Flynn, is your client asserting any claims against Kenneth and Patricia mentioned? No, Your Honor. Okay. Thank you. Thank you, and that's my time. Thank you. Thank you. May it please the court, Jacob Maurer here on behalf of the Best Service Company. Your Honor, I won't belabor the facts, but as detailed in our appellee's brief, we believe there are at least three grounds supporting Judge Thrash's grant of our motion for summary judgment of the money hadn't received claim against Best Service. And that's the only claim on appeal against your client. Is that correct? Technically, Your Honor, there are actually two. The second claim was the plaintiff's claim for attorney's fees pursuant to OCGA 13611. That really flows from their claim for money hadn't received. If the money hadn't received, dismissal is affirmed. There's no basis for 13611. If this court reverses, that would then become a trial issue, just as the money hadn't received claim would then become a trial issue. But otherwise, it's just money hadn't received at this juncture. And my understanding is the appellant abandoned all the other claims against Best Service, tortious interference, punitive damages, and the like. So as to the money hadn't received claim, our argument is essentially twofold, and Judge Thrash's order, I believe, touched on both points. First, as a practical matter, the remedies provision in the contract between prime asset and CAITL essentially precludes any claim CAITL will have against my client for money hadn't received. In other words, if there is an enforceable repurchase option under that unsecured loan transaction, as a practical matter, CAITL has no rights to anything relating to this account that was sold. And that would essentially preclude any claim against my client. I believe Mr. Flynn covered some of the responses in terms of why that's an enforceable provision. And I would simply highlight that the cases cited by CAITL are, in our opinion, very distinguishable and quite different than the cases and the facts at issue in this particular case. And then specifically, for example, in the Ocean Dunes and the Hackett cases, beyond the fact that those were condo sales involving really earnest money claims for deposits and limitations to that earnest money deposits, you really had cases where there was an entire failure of the contract. And the courts were really looking at a pretty significant and severe damages limitation in the context of an entire failure of the contract. The damages provision here is quite limited. It's limited only to the breach of representations and warranties. And indeed, the damages limitation for a breach of those representations and warranties that provides a repurchase of a single account out of the hundreds at issue really is a way to preserve the integrity of that contract, as opposed to a damages limitation that bars a party from any claims for any breach of the contract in total. And so we think that is an enforceable remedy. And because it's an enforceable remedy, it essentially precludes any claims against my client for money hadn't received. If we were to, and I'm not saying we're going to, but if we were to reverse the district court as to the enforceability of the repurchase remedy, would we have to reverse the district court's dismissal of Cato's claim? Or would we still affirm it? I think you could still affirm it, Your Honor. And it was a great timing of your question because I'm about to get into that portion of our argument as well. And this concerns really the elements of a money hadn't received claim and our arguments as to why beyond the contract defense, the court correctly granted our summary judgment as to money hadn't received. The case, I think it bears mentioning that in the underlying case, the plaintiff's theory was largely based on an Article III negotiable instrument theory. The theory being, and I'm paraphrasing, but we, Cato, bought this negotiable instrument. We're now the bearer, and we have all rights under the sun. It's payable to us. It wasn't a negotiable instrument. In fact, it's a home equity line of credit. So Article III is inapplicable. It's just an account like any other. So in our view, once Cato acquired that account, as they noted, they are the assignee from Prime Asset who is the ass ignored. They stepped into the shoes of Prime Asset. And as of December 21, 2012, Prime Asset's rights, Prime Asset's rights to the mentioned account, were subject to the assignment to my client, Best Service. There was a fairly, in our view, fairly unambiguous assignment to our client, assignment for collection. But I think that assignment for collection was beyond a services contract. It was an assignment. They assigned their rights to Best Service. And that well predated Prime Asset's, or I'm sorry, well dated Cato's purchase of that account from Prime Asset. In fact, the original assignment to Best Service occurred in November 15, 2011, more than a year prior to the sale from Prime Asset to Cato. So under the Southern Telecom case that's cited at length by the appellant, we agree. They stepped into the shoes of Prime Asset. So in 2012, December 2012, where are we? Well, Best Service has that account for collection. Best Service is acting to collect that account. What does Cato do after they get the account? There was, in fact, an email that was sent to Best Service. The email was equivocal at best. There's no demand that Best Service cease collection efforts. No termination of the collection assignment. In fact, the language of that email references, and I'm paraphrasing, but we just need to see what's been done and what needs to be done. So, you know, even assuming Cato acquired full and complete rights to that account, they did nothing to exercise any rights to terminate the collection agreement, to instruct Best Service to cease its collection efforts. Best Service continues to collect the account, and they do collect the account. And, again, this gets into our citation of the time insurance case, which we feel is directly on point. There's no dispute in this case that Best Service collected that account, no dispute that they exerted efforts to do so and were successful doing so. Cato took no steps to either intervene in that case, to send a cease and desist demand, really did nothing to compel Best Service to stop its collection, to even tell Best Service to stop its collection. So Best Service was well within its rights to continue its collection efforts. It did collect. And under the time insurance case, they're entitled to retain $60,000, which was their fee under the collection and assignment agreement. And just as in time insurance, just as Grady Hospital was entitled to retain its fees for services it rendered, Best Service is entitled to retain those fees. And under that theory, there's no claim for money hadn't received by Cato. Those are truly funds of Best Service. Cato, having allowed Best Service to continue to collect that account, has no rights to those funds. And so on that basis, we believe Judge Thrush's ruling dismissing the claim for money hadn't received against Best Service is well considered and should be affirmed by this court. Happy to answer any questions, Your Honors. I'm going to ask my question about the mentions. Is your client asserting any claims against Mr. and Mrs. Minchin? Absolutely not, Your Honor. Thank you. Thank you. Mr. Jones? Mr. Jones? Thank you. The focusing on the claims against Best Minchin for money hadn't received, which is the clear focus of the questions today. You know, the district court, as noted earlier, did not rule on anything other than the fact that Cato did not have a claim for money hadn't received because of Section 6.3 of the contract. And so, you know, as discussed earlier, that provision is unenforceable. And because that limitation on Cato's rights is unenforceable, then the district court erred by saying that there was no money hadn't received claim. With respect to going beyond what the— Let me ask you. In your initial brief, you have one sentence about the money hadn't received claim that is to the effect that for the same reasons the money hadn't received claim, the district court erred on that. I'm concerned that you may have abandoned that claim. Your Honor, we have not abandoned that claim. We made it clear in the brief that we were appealing on the district court's holding, which granted summary judgment to Best Service on the money hadn't received claim, and we focused on the decision that the court made. The only ruling or determination by this court, by the district court rather, that we had no claim against Best Service was that we had no claim for money hadn't received because of Section 6.3. So we focused in our brief on what the district court actually ruled. With respect to the abandonment issue, Your Honor, in the opening brief, the Best Service relies primarily on a decision by this court in Sapopo. And in the Sapopo case, it involved an appeal of alternative rulings by the court. And even before I went back and reread Sapopo in preparation for the arguments here today and I was reading the briefs, it occurred to me, okay, this is really sort of an alternative rulings type issue because what we focused on in our opening brief was what the court actually ruled on. And if you read Sapopo, it involves a case where the district court made alternative rulings. Plaintiff wins or plaintiff loses because of under two different scenarios. I don't want to take up all your time on that issue. I understand your argument. Okay. Thank you, Your Honor. So, you know, I think, you know, focusing on, you know, I think, again, the district court should be reversed on that so we can go back to trial and actually have a determination on the money hadn't received claim. I don't think summary judgment was appropriate on that claim. I think at a minimum, genuine issues of material fact existed on that claim. And so, you know, again, the issue is before this court is, you know, whether 6.3 of the contract between Prime Asset and Cadle bars claims against best service. And the answer is based on the district court's erroneous ruling on that point, that's why the district court granted summary judgment in favor of best service. What's your response to the motion to dismiss the appeal? Your Honor, we would request the court to determine the claims against Prime Asset should be determined under the pendant and appellate jurisdiction rule. And further, as noted. But you never asked for that before. I mean, I don't understand why they're sitting here. You're appealing a final. You asked for the certification. You limited it to best and the mentions, those rulings. You didn't mention Prime at all. And now suddenly we're here and you're trying to morph that into something where we're adjudicating Prime when there was no rule. They never filed a motion for summary judgment. The district courts adjudicated nothing for Prime. So I'm having trouble understanding why you think we should be adjudicating anything as to Prime ourselves. May I respond, Your Honor? Sure. We understand that the answer is because it's inextricably intertwined. You didn't say that before. You didn't file a special motion or anything? Understood. And further, the district court has since entered that order is discussed during best services and Prime Asset's argument that basically said we'd abandon the claims, which we hadn't. So that sort of makes it a final. But you never appealed that order. That was in August. That's a very different order. That's not an order that has anything to do with any of this. It's the whole case and you never appealed that order. Yes, Your Honor. That is correct. It's a matter of it is inextricably intertwined. I've said that before. It's the same issue and we would just ask the court to exercise jurisdiction for one thing. I understand it's a jurisdictional issue, but it's two and a half years and Prime Asset never raised that argument. In their opening brief, they didn't raise that either. I think my time is up. Thank you. We're going to take just a five-minute break before we hear the next case. Thank you all very much. Valerie. Could you get rid of this thing under the table? I can't even push my chair. Thank you.